UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

REVELLE LOVING,                                        No. 12-cv-551 (SRN/LIB)

           Plaintiff,

v.                                                    **REPORT AND RECOMMENDATION**

THOMAS ROY et al,

           Defendants.

Revelle Loving ("Plaintiff") is a Minnesota state prison inmate. He commenced this action by filing a complaint seeking relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. [Docket No. 1]. Defendants[1] have filed a motion seeking to have Plaintiff's claims against them dismissed on summary judgment pursuant to Fed. R. Civ. P. 56. (See Defs.' Mot. Summ. J. [Docket No. 16]; Defs.' Mem. Supp. Mot. Summ. J. [Docket No. 17] (hereinafter "Defs.' Mem."); Defs.' Affs. Supp. Mot. Summ. J. [Docket Nos. 18-21]). Plaintiff has filed several documents in opposition to Defendants' motions, (See Pl.'s Mot. Deny Summ. J. [Docket No. 29];[2] Pl.'s Mem. Opp. Mot. Summ. J. [Docket No. 30] (hereinafter "Response" or "Pl.'s Mem."); Pl.'s Decls. Opp. Mot. Summ. J. [Docket Nos. 31-36]), and Defendants have replied to Plaintiff's opposition, (See Defs.' Reply Supp. Mot. Summ. J. [Docket No. 38] (hereinafter "Defs.' Reply")).

---

[1] Defendants are Thomas Roy, Kent Grandlienard, David Reishus, Lcie Stevenson, Michael Green, Charles Tobritzhover, Bradley Gross, Rodney Rivard, Graham Besonen, Nick Ploussard, Aaron Johnson, Miscone Klin, and Zackery Nuehring. All are employees of the Minnesota Department of Corrections, and all are sued both in their individual and their official capacities. (See Compl.)

[2] Although styled as a motion, Plaintiff's Motion to Deny Defendants' Summary Judgment Motion, [Docket No. 29], is substantively merely a notice that Plaintiff intends to contest Defendants' Motion for Summary Judgment. Consequently, Plaintiff's "Motion" is denied. Plaintiff suffers no prejudice from the Court's summary denial of his "motion," as the Court will fully consider Plaintiff's memorandum and declarations in opposition to the motion for summary judgment.

Defendants' motion has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' motion be granted.

# I.    BACKGROUND

Plaintiff was convicted in 2008 of first-degree premeditated murder in the January 16, 2007, shooting deaths of Mosetta Peters and Ja'Naurri Allen, and was sentenced to two terms of life in prison without the possibility of parole, to be served concurrently. See State v. Loving, 775 N.W.2d 872, 874, 877 (Minn. 2009). He is currently incarcerated at the Minnesota Correctional Facility at Oak Park Heights ("MCF-OPH"), where he has an extensive record of disciplinary infractions, which has resulted in his being housed in the administrative control unit ("ACU"). (Aff. Monio [Docket No. 19] (**document filed under seal**), at Exs. A-C).

Plaintiff began serving his sentence at the Minnesota Correctional Facility at St. Cloud ("MCF-SC") in June 2008, and almost immediately was cited for multiple disciplinary infractions, including assault. (Aff. Puffer [Docket No. 18] (**document filed under seal**), Ex N; Aff. Monio Ex. C). Consequently, he was transferred to MCF-OPH. (Id.). Through July 23, 2011, counting both his time at MCF-SC and MCF-OPH, Defendant was found guilty on at least five (5) disciplinary counts of assault. (Aff. Monio, Ex. C).[3]

On October 11, 2011, the Minnesota District Court for the Tenth Judicial District (the "State court") determined that Plaintiff "pose[d] a substantial likelihood of physical harm to [him]self or others. (Aff. Monio, Exs. M, ¶ 9). Pursuant to that and other findings, the Court

---

[3] Assault on staff constitutes a violation of Rule No. 411, assault with a weapon on staff constitutes a violation of Rule No. 413, and assault with a weapon on an inmate constitutes a violation of Rule 414. (See Aff. Monio, Ex. H, at 14.). Through July 23, 2011, Plaintiff had been found guilty of two (2) violations of Rule 411, three (3) violations of Rule 413, and one (1) violation of Rule 414, for incidents on July 9, 2008; July 11, 2008; October 9, 2010; and July 16, 2011. (Aff. Monio, Ex. C).

ordered that Plaintiff be committed as mentally ill, and authorized the MCF-OPH medical staff

to treat him by administering specified medications "in an amount and with such frequency

issued an Order for Commitment as Mentally Ill and Administration of Neuroleptic Medications

as to Plaintiff. (Aff. Monio, Ex. M).[4]

    Beginning in January 2011, and continuing at least through January 2012, Plaintiff filed

multiple grievances alleging that various prison employees provided him food that had been

contaminated with feces, wine, drugs, hepatitis, and HIV. (See Compl. at 6-7, ¶ 12; Pl.'s Decl.

Food Contamination, Exs. A-D [Docket No. 35-1]; Aff. Puffer, Exs. I-L, N). These allegations

of food contamination form the basis for Plaintiff's first cause of action. (See Compl. at 6-7, ¶

12; at 11, ¶¶ 50-51) (hereinafter, the "food contamination claim").[5]

    Plaintiff also brings claims arising out of an incident that occurred on December 18,

2011, (See Compl. 7-9, ¶¶ 13-31; at 11, ¶ 49) (hereinafter, the "excessive force claims"). The

December 18, 2011, incident was recorded by two (2) fixed surveillance cameras without audio,

---

[4] The report from a psychiatric evaluation performed on March 27, 2012, describes Plaintiff as exhibiting "paranoid delusions and aggressive, assaultive behavior toward the staff involved in his delusions," and diagnosed him as having "Delusional Disorder – Persecutory Type." (Aff. Monio, Ex. N). Delusional Disorder – Persecutory Type is described as:

    This type applies when the central theme of the delusion involves the person's belief that he or she is being conspired against, cheated, spied on, followed, poisoned or drugged, maliciously maligned, harassed, or obstructed in the pursuit of long-term goals. Small slights may be exaggerated and become the focus of a delusional system. The focus of the delusion is often on some injustice that must be remedied by legal action ("querulous paranoia"), and the affected person may engage in repeated attempts to obtain satisfaction by appeal to the courts and other government agencies. Individuals with persecutory delusions are often resentful and angry and may resort to violence against those they believe are hurting them.

American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 323, 325 (4th ed. text revision 2000).

    Subsequently, the State court on May 14, 2012, entered an order continuing Plaintiff's treatment by medication. (Aff Monio, Ex. O).

[5] Plaintiff variously alleges that he was provided "contaminated food," (See, e.g., Pl.'s Decl. Food Contamination [Docket No.35], at ¶ 1), or "poisoned food," (See, e.g., Pl.'s Decl. Food Contamination, Ex. A), and that he was served food on contaminated trays, (See, e.g., Pl.'s Decl. Food Contamination, Ex. B (alleging that he was served "a lunch tray containing feces")). For the sake of simplicity and judicial economy, the Court refers to all such allegations as "food contamination," and to Plaintiff's claim arising from those allegations as the "food contamination claim."

and one (1) hand-held video camera that also recorded audio. (Aff. Monio, Ex. D.).[6] On that

day, as Plaintiff was standing at the top of a small flight of stairs and Defendant Johnson was

climbing the stairs, Plaintiff lowered his shoulder into Defendant Johnson, propelling both of

them down the staircase. (Aff. Monio, Ex. D, at File 1). Upon reaching the bottom of the stairs,

Plaintiff directed several blows to Defendant Johnson's head and/or face before Defendant

Johnson and other officers[7] were able to subdue Plaintiff. (Id.).

After Plaintiff was subdued, officers escorted Plaintiff through an area known as DLU-5

and to a nearby cell. (Id. at Files 1-3; Compl. at 7, ¶¶ 19-20). During that escort, a second

altercation ensued, upon which Plaintiff was again subdued. (Aff. Monio, Ex. D, at File 3).

With regard to this second altercation, Plaintiff alleges that he did nothing to provoke

Defendants. (Pl.'s Decl. Resp. Aff. Ploussard [Docket No. 32], at 1 (hereinafter "Pl.'s Resp.

Ploussard"). On the other hand, Defendant Ploussard asserts that as he and other officers were

escorting Plaintiff to his cell, Plaintiff tried to bite him, causing the officers to respond and

subdue Plaintiff for a second time. (Aff. Ploussard [Docket No. 21], at 2, ¶ 6; Aff. Ploussard,

Ex. A [Docket No. 21-1]).

As a result of these two altercations on December 18, 2011, Plaintiff sustained two

lacerations of his face, including one above his left eye. (Aff. Monio, Ex. G). However, Plaintiff

did not then report any neck pain or loss of vision, and despite blood in his mouth he stated that

---

[6] Exhibit D is a compact disc containing the three (3) video files:
- The first file, titled "12-18-11 CX-4 Staff Assault," (hereinafter "File 1"), contains a video recording of the staircase and landing where the incident began. The video runs from shortly before the incident until the time when Defendants subdued Plaintiff.
- The second file, titled "12-18-11 Loving After Staff Assault," (hereinafter "File 2"), contains a video and audio recording of the living unit and cell that Plaintiff was taken to after he was subdued. The video runs from sometime after he was subdued until the time when he was left alone in his cell.
- The third file, titled "CX4LVL2-DLU5-C9," (hereinafter "File 3" contains a video recording of the living unit that Plaintiff was taken to after he was subdued. The video runs from shortly before the incident until the time when Plaintiff is escorted to his cell.

[7] It is not clear whether all of the responding officers involved in subduing Plaintiff are named as defendants.

none of his teeth were loose. (Id.). Plaintiff was instructed to notify the prison medical staff if he experienced any further new or continuing symptoms. (Id.).

Plaintiff's final claim arises from the disciplinary action that followed the December 18, 2011, incident. (See Compl. at 9-12, ¶¶ 32-48, 52-53) (hereinafter, the "due process claim"). On December 19, 2011, Plaintiff was charged with several disciplinary counts of assaulting staff, disorderly conduct, and disobeying a direct order. (Id. at 9, ¶ 33; Aff. Monio, Ex. J). These disciplinary counts are considered "minor" charges because they can result only in disciplinary segregation; charges that may result in an extension of an offender's incarceration are considered "major" charges. (Aff. Monio, Ex. I). On December 22, 2012, the charges were amended to reflect that several of the counts were being charged as "aggravated" counts.[8] (Compl. at 9, ¶ 35; Aff. Monio, Ex. K). On or about the same date, Defendant requested that all MCF-OPH staff listed in the disciplinary complaint be called as witnesses at his disciplinary hearing, but his request was denied. (Compl. at 9, ¶¶ 36-37). On December 27, 2011, the charges were amended again to reflect that Plaintiff had tried to bite one of the officers. (Aff. Monio, Ex. L).[9]

Plaintiff's hearing on the disciplinary charges was held on January 3, 2012, in front of Defendant Green. (Compl. at 9-10, ¶¶39-41; Aff. Monio, Ex. M). Plaintiff pleaded not guilty to each of the disciplinary charges. (Aff. Monio, Ex. M). Plaintiff again requested that all prison staff present for the December 18, 2011, incident and an inmate be called as witnesses, and his request was again denied, in accordance with Minnesota Department of Corrections Policy No.

---

[8] For each disciplinary infraction, there is a maximum penalty, which may be doubled if the infraction is charged as an aggravated infraction. (Aff. Monio, Ex. H).

[9] Exhibit L dies not specify which officer Plaintiff allegedly tried to bite. The narrative, generated by Defendant Klin, states: "After Nurse Billie Jo checked me for injuries, I was escorted to the hospital for further examination. **During the incident, Offender Loving placed his mouth on him attempting to bite his left hand**." (Aff. Monio, Ex. L (emphasis added)). However, hand-written notes Exhibit K indicate that it was Defendant Ploussard whom Plaintiff tried to bite. (See Aff. Monio, Ex. K). This is consistent with Defendant Ploussard's statement in his affidavit. (Aff. Ploussard, at 2, ¶ 6).

303.010.  (Compl. at 9-10, ¶¶ 39-41; Aff. Monio Ex. I, at ¶ F).[10]  Plaintiff also states that he was

denied access to incident reports, denied the opportunity to present written evidence in the form

of affidavits, and denied the assistance of a staff representative.  (Compl. at 9, ¶ 38).  Upon

reviewing incident reports and the video evidence of the incident, and in partial reliance on

Plaintiff's statement that he did not dispute that he had assaulted prison staff, Defendant Green

found there was a preponderance of evidence to conclude that Plaintiff was guilty of three (3)

counts each of assault and aggravated disorderly conduct.  (Aff. Monio, Ex. M).  Plaintiff was

sentenced to a total of 690 days, or approximately twenty-three (23) months, of segregation.

(Id.; Compl. at 10, ¶ 42).  Subsequently, Plaintiff filed an administrative appeal of the

disciplinary decision.  (Compl. at 10, ¶ 45).  Defendant Grandlienard, who was the warden of

MCF-OPH, denied that appeal on January 19, 2012.  (Id. at 10, ¶ 46; Aff. Monio, Ex. N).


II.     **PLAINTIFF'S CLAIMS**

        Plaintiff brought his Complaint on March 1, 2012, under 42 U.S.C. § 1983, alleging that

Defendants (1) provided him with contaminated food, and/or refused to remedy the same, in

violation of his Eighth Amendment right against cruel and unusual punishment; (2) used

excessive force in subduing him on December 18, 2011, in violation of his Eighth Amendment

right against cruel and unusual punishment; and (3) violated his right to due process under the

Fourteenth Amendment by denying him access to witnesses during the January 3, 2012,

disciplinary hearing.  (See Compl.).

        Plaintiff asks this Court for (1) declaratory relief finding that his Eighth Amendment right

against cruel and unusual punishment was violated by Defendants serving him contaminated

[10] Minnesota Department of Corrections Policy No. 303.010, Offender Discipline, specifies that in a hearing
concerning alleged minor violations, an inmate "can not have representation," and "can not call witnesses."  (Aff.
Monio, Ex. I, at ¶ F(3)-(4).

food, and by their subduing him on December 18, 2011; and (2) compensatory damages in the amount of $320,000.00, and unspecified punitive damages. (Id. at 12-13).[11]

## III.     STANDARD OF REVIEW

Summary judgment is appropriate only when the evidence shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the nonmoving party may not rest on mere allegations or denials in its pleadings, but must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). "Naked assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton v. University Healthcare Sys., L.L.C., 136 Fed. Appx.

---

[11] In his Complaint, Plaintiff also sought injunctions barring Defendants from providing him with contaminated food, and expunging his disciplinary convictions and sentence related to the December 18, 2011 incident. (Compl. at 12-13, ¶¶ B-C). However, in his Response, Plaintiff withdrew his plea for injunctive relief. (Pl.'s Mem. at 4 ("the plaintiff is no longer seeking a preliminary injunction nor a temporary restraining order").

596 (5th Cir. 2005) (unpublished decision); <u>see also</u> <u>Simms v. McDowell</u>, 2009 U.S. Dist. LEXIS 89054, *17 (W.D. Ky. Sept. 25, 2009) (holding that "speculation" that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment.").  "A properly supported motion for summary judgment is not defeated by self-serving affidavits." <u>Frevert v. Ford Motor Co.</u>, 614 F.3d 466, 473 (8th Cir. 2010) (quoting <u>Bacon v. Hennepin Cnty Med. Ctr.</u>, 550 F.3d 711, 716 (8th Cir. 2008)).  "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." <u>Id.</u> at 473-74.

The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

## IV.     DISCUSSION

### A.  Plaintiff's Official Capacity Claims

Defendant argues that Plaintiff's claims for money damages against Defendants in their official capacities fail as barred by the Eleventh Amendment.  (Defs.' Mem. at 8-9).  Plaintiff, in his Response, expressly withdraws all official capacity claims against Defendants.  (Pl.'s Mem. at 4).[12]  Consequently, the Court recommends that all of Plaintiff's claims against Defendants in their official capacities be dismissed with prejudice.[13]

---

[12] Plaintiff writes:
> The plaintiff is only suing all defendants in their individual capacities.  The plaintiff is no longer pursing the claims against the defendants in their official capacities because the plaintiff is no longer seeking a preliminary injunction nor a temporary restraining order.

(Pl.'s Mem. at 4).

[13] Ordinarily, when a party withdraws a claim, the Court would dismiss the claim without prejudice.  However, in the present case, the claims that Plaintiff has withdrawn are barred as a matter of law.  A suit against a public

### B. Plaintiff's "Food Contamination" Claims

#### 1. Plaintiff's food contamination claims against Defendants Grandlienard, Reishus, Roy, and Stevenson fail as a matter of law.

Plaintiff's food contamination claims with regard to Defendants Grandlienard, Reishus, Roy, and Stevenson do not allege that they, themselves, provided Plaintiff with contaminated food; rather he alleges that they "have been placed on notice of their subordinate staff giving the Plaintiff contaminated food" and have failed either to discipline the offenders or to "prevent subordinate staff from giving the Plaintiff contaminated food."  (See Compl. at 6-7, ¶ 12c; Pl.'s Mem. at 6-7; Pl.'s Decl. Evid. Showing Def. Grandlienard et al. Refused to Investigate Food Contamination Compls. [Docket No. 34]).  Defendants argue that such a claim fails as a matter of law.  (Defs. Mem. at 11-12).

To bring an actionable civil rights claim against Defendants in their individual capacities under 42 U.S.C. § 1983, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendants violated the complainant's federal constitutional rights while acting under color of law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Furthermore, "[l]iability under section 1983 requires a causal link to, *and direct responsibility for*, the deprivation of rights" protected by the Constitution.  Madewell v.

---

employee in that person's official capacity is merely a suit against the public employer. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  "The Eleventh Amendment immunizes an unconsenting State from damage actions brought in federal court, except when Congress has abrogated that immunity for a particular federal cause of action." Hadley v. N. Arkansas Cmty Technical Coll., 76 F.3d 1437, 1438 (8th Cir. 1996).  "To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so." Faibisch v. Univ. of Minnesota, 304 F.3d 797, 800 (8th Cir. 2002) (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238-40 (1985)).

In the present case, Plaintiff has not established that Minnesota has waived its immunity from damages for any of the laws at issue in this case, nor has he established that Congress abrogated Minnesota's immunity with respect to any of the claims at issue.  Indeed, Plaintiff does not dispute Defendant's sovereign immunity argument.  (See Pl.'s Mem.).  "State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." Arizonans for Official English v. Arizona, 520 U.S. 43, 69, n. 24 (1997).  Consequently, the Court will recommend that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice for lack of subject matter jurisdiction.  Accord Jones v. Minn. Dep't of Corr., No. 05-cv-1249 (RHK/AJB), 2006 U.S. Dist. LEXIS 80351, at *18 (D. Minn. Oct. 31, 2006) (Kyle, J.) (dismissing official-capacity claims for money damages in § 1983 action alleging Eighth Amendment violations).

Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) (emphasis added); Speed v. Ramsey County, 954

F.Supp. 1392, 1397 (D. Minn. 1997) (same).  In other words, civil rights claimants must plead

facts showing each named defendant's *personal* involvement in alleged constitutional

wrongdoing.  Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999); see also Beck v. LaFleur, 257

F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because

plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to

support such a claim").

In this case, Plaintiff has failed to plead any personally actionable § 1983 claim against

Defendants Grandlienard, Reishus, Roy, and Stevenson.  Plaintiff argues that a § 1983 claim can

reach an indirect actor "'if the defendant[s] set in motion a series of events' that [they] knew or

reasonably should have known would cause a constitutional violation, even if others actually

performed the violation."  (Pl.'s Mem. at 6 (quoting Conner v. Reinhard, 847 F.2d 834, 397 (7th

Cir. 1988)).  In Conner, the plaintiff alleged that she was fired from her job working for the City

of Green Bay, Wisconsin (the "City") in violation of her First Amendment right of free speech,

and named as defendants her former supervisor and the estate of former City Alderman Richard

Zolper ("Alderman Zolper").  847 F.2d at 385.  At least one witness testified that the supervisor

had told her that, shortly before the plaintiff was fired, Alderman Zolper had told the supervisor

that he wanted the plaintiff fired, and that if she was not fired her position would be eliminated

from the budget.  Id. at 396.  In light of that testimony, the Seventh Circuit concluded that "a jury

could reasonably find Zolper liable for Conner's discharge."  Id. at 397.

In the present case, however, Plaintiff's allegations against Defendants Grandlienard,

Reishus, Roy, and Stevenson—in essence, that they turned a blind eye to the alleged food

contamination—is a *passive* act vastly different in character from affirmative acts at issue in

Conner. In <u>Glick v. Sargent</u>, 696 F.2d 413 (8th Cir. 1983), the Eighth Circuit affirmed the dismissal of the plaintiff's claims against the prison warden for failure to state a claim, stating that "[t]he warden's responsibility for overseeing the operations of the [prison] is an insufficient basis for liability in a suit brought under 42 U.S.C. § 1983. The doctrine of *respondeat superior* is inapplicable to actions brought pursuant to this section." 696 F.2d at 414 (citing <u>Cotton v. Hutto</u>, 577 F.2d 453, 455 (8th Cir. 1978); <u>Rizzo v. Goode</u>, 423 U.S. 362, 370-71 (1976)).

Because Plaintiff has failed to present any admissible factual evidence of, much less even allege any unconstitutional personal act by, Defendants Green, Klin, Rivard,[14] Grandlienard, Reishus, Roy, and Stevenson, there are no genuine disputes of material fact which would preclude summary judgment on behalf of these Defendants as a matter of law. Accordingly, the Court recommends that the food contamination claims against them be dismissed.

**2.   Defendants Besonen, Gross, Johnson, Nuehring, and Ploussard are entitled to summary judgment on Plaintiff's "food contamination" claims, because Plaintiff has failed to establish a genuine issue of material fact exists on those claims.**

Plaintiff alleges that Defendants Besonen, Gross, Johnson, Nuehring, and Ploussard provided him with contaminated food on multiple occasions in 2011 and 2012. (<u>See</u> Pl.'s Decl. Food Contamination, Exs. A-D). Defendants argue that Plaintiff's often repeated mere allegations are unsupported by any objective evidence and, therefore, that Defendants are entitled to summary judgment on the food contamination claims. (Defs. Mem. at 9-11).

Plaintiff offers as proof of his food contamination claim (1) the statements contained in his own Declaration, and (2) his many grievance forms in which he *complained* of receiving contaminated food. (Pl.'s Decl. Food Contamination and Exs. A-D [Docket Nos. 35, 35-1]).

---

[14] The Court notes that Plaintiff does not make any factual allegations or claims concerning food contamination against Defendants Green, Klin, or Revard. (<u>See</u> Compl. at 6-7, ¶ 12).

"A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert v. Ford Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin Cnty Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Id. at 473-74. Thus, Plaintiff's allegations in his pleading and his Declaration, without further support, are insufficient to allow his food contamination claim to survive a motion for summary judgment. His grievance forms likewise fail to provide evidence sufficient to survive a motion for summary judgment, as they, too, merely contain "self-serving" statements with no objective evidence of the food contamination that he alleges.[15]

Summary judgment is appropriate where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. With regard to Plaintiff's food contamination claims against Defendants Besonen, Gross, Johnson, Nuehring, and Ploussard, even after viewing the evidence in the record in the light most favorable to Plaintiff, the Court finds that summary judgment is appropriate because Plaintiff "has not submitted sufficient evidence from which a rational finder of fact could conclude that" his food ever was contaminated. See Barnett v. Boatmen's First Nat'l Bank, 1993 U.S. App. LEXIS 11014, at *2 (8th Cir. May 13, 1993) (unpublished).

Consequently, the Court recommends that, with regard to Plaintiff's food contamination claims against Defendants Besonen, Gross, Johnson, Nuehring, and Ploussard, Defendants' Motion for Summary Judgment, [Docket No. 16], be granted, and that Plaintiff's food

---

[15] The Plaintiff's mere allegations with regard to his allegations of food contamination, both in his Declaration and in his grievance forms, are further undermined because of his diagnosed Delusional Disorder – Persecutory Type, which often manifests as delusions of "being poisoned or drugged." See fn.4, supra, and accompanying text.

contamination claim against Defendants Besonen, Gross, Johnson, Nuehring, and Ploussard be dismissed with prejudice.

### C. Plaintiff's Excessive Force Claim

Plaintiff alleges that, on December 18, 2011, Defendants Besonen, Gross, Johnson, Klin, Nuehring, Ploussard, Rivard, and Tobritzhofer attacked him without provocation causing a variety of injuries and violating his Eighth Amendment right to be free of cruel and unusual punishment. (Compl. at 7-9, ¶¶13-31

"[A] prison official violates the Eighth Amendment only when two requirements are met": 1) "the deprivation alleged must be, objectively, 'sufficiently serious'"; and 2) the "prison official must have a 'sufficiently culpable state of mind.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994). Thus, the test provides an objective and subjective element. Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008). Regarding the first element, the Eighth Circuit has held that "not every push or shove violates the Constitution, but any use of force greater than *de minimis*, or any use of force that is 'repugnant to the conscience of mankind,' does." Id. "No clear line divides *de minimis* injuries from others." Id. at 448. The second element, in excessive force claims, requires a determination whether the force was used "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 446 (internal quotation omitted); see also Muhammad v. McCarrell, 536 F.3d 934, 938 (8th Cir. 2008). Because the second element is "the core judicial inquiry," the Court addresses that element first. Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000). "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir. 1996) (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).

> **1. Defendants' use of force against Plaintiff's on December 18, 2011, were merely a "good faith effort to maintain or restore discipline," and, thus, did not constitute**

**a violation of the Eighth Amendment's guarantee against cruel and unusual punishment.**

Under the second prong, the Court considers "whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by correctional officers, the efforts by the officers to temper the severity of the forceful response, and the extent of the inmate's injuries." Hamilton, 452 F.3d at 972. Because "the use of force is sometimes required in prison settings," Irving, 519 F.3d at 446, courts frequently uphold officers' ability to use physical force to restrain noncompliant inmates. See, e.g., Hamilton, 452 F.3d at 972; Jasper v. Thalacker, 999 F.2d 353, 354 (8th Cir. 1993) (use of a stun gun to subdue a combative prisoner, even when four guards were present, was not excessive force).

### a. The first altercation

With regard to the first altercation on December 18, 2011, which began on a staircase at MCF-OPH and ended on the landing at the foot of the stair, all undisputed evidence in the record before the Court indicates that the officers used reasonable force in restraining Plaintiff. First, there was an objective need to apply physical force to restrain Plaintiff. Plaintiff initiated the incident by lowering his shoulder into Defendant Johnson as Defendant Johnson neared the top of the stairs, propelling both down the staircase to the landing below, where Plaintiff proceed to beat Defendant Johnson about the head—all of which is clearly seen on the undisputed video evidence. (Aff. Monio, Ex. D, at File 1).[16] The force applied to Plaintiff in the initial altercation was limited only to take him to the ground so that he could be handcuffed and restrained. At no

---

[16] Plaintiff alleges that the "video tracks on the compact disk is [sic] altered, edited, and false and hereby disputed." (Pl.'s Decl. Resp. Aff. Monio [Docket No. 31] (hereinafter, "Pl.'s Resp. Monio"), at 1, ¶ 2). Despite his conclusory allegations that the video is false, Plaintiff provides no further evidence to support his allegation. As noted in Part III, supra, "[n]aked assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton, 136 Fed. Appx. 596; see also Simms, 2009 U.S. Dist. LEXIS 89054, *17.

time did the officers unnecessarily or wantonly strike or kick Plaintiff. Given the objective need for the restraint, the limited amount of force used to take Plaintiff to the ground was not excessive.

The next factor also demonstrates that the force was not excessive. Because of Plaintiff's combative conduct and assaultive behavior towards the officers that day, and his extensive disciplinary history including multiple assaults on prison staff,[17] the apparent threat to their safety was real and reasonable—as demonstrated by Plaintiff's self-initiated charging attack on Defendant Johnson.

### b. The second altercation

With regard to the second altercation on December 18, 2011, which occurred in the immediate aftermath of the first altercation in an area of MCF-OHP known as DLU-5 while officers were escorting Plaintiff to a new cell, the evidence on the present record indicates that the officers again used reasonable force in restraining Plaintiff. First, there was an objective need to apply physical force to restrain Plaintiff. Plaintiff initiated the incident by resisting his escort and/or by trying to bite Defendant Ploussard. (See Aff. Ploussard, at 2, ¶ 6; Aff. Ploussard, Ex. A; Aff. Monio, Ex. D, at File 3). Plaintiff states that Defendants used force against him "without provocation," and disputes Defendants' allegation that he bit or tried to bite Defendant Ploussard. (Compl. at 7, ¶ 20; Pl.'s Resp. Ploussard, at ¶¶ 2, 9). Plaintiff argues that the disagreement over whether he bit or tried to bite Defendant Ploussard is a disputed fact and, therefore, sufficient to defeat a motion for summary judgment. (Pl.'s Resp. Ploussard, at 1, ¶ 1). Because of the angle from which it was shot and the distance between the video camera and the altercation, the available video evidence does not resolve the question of whether Plaintiff bit or tried to bite Defendant Ploussard. (See Aff. Monio Ex. D). However, the video evidence does

---

[17] See fn.3, supra.

sufficiently demonstrate that Defendants began to use force only in response to Plaintiff's efforts to resist his escort by turning sharply to the right, toward Defendant Ploussard; that Defendants continued to use force only while Plaintiff continued to resist them; and that Defendants stopped using force when Plaintiff stopped resisting.[18] Thus, the force applied to Plaintiff in the second altercation was again limited only to take him to the ground so that he would stop resisting his escort. In this second altercation, on the present record, at no time did the officers unnecessarily or wantonly strike or kick Plaintiff. Given the objective need for the restraint evident in the record, the limited amount of force used to take Plaintiff to the ground was not excessive.

The next factor also demonstrates that the force was not excessive. Because of Plaintiff's combative conduct and assaultive behavior towards the officers that day, and his extensive disciplinary history including multiple assaults on prison staff,[19] the apparent threat to their safety was real and reasonable.

### 2. Even if Plaintiff had demonstrated that Defendants had the requisite state of mind to sustain an excessive force claim under the Eighth Amendment, which he did not, his injuries from the December 18, 2011, incident were not "sufficiently serious" to constitute a violation of the Eighth Amendment.

Because the Court finds that the Plaintiff has failed to demonstrate any competent, admissible evidence that would satisfy the second prong, it need not address the first prong of whether Plaintiff's alleged injuries were objectively "sufficiently serious." However, the Court notes, without deciding, that the injuries Plaintiff sustained on December 18, 2011, consisted only of minor lacerations which were treated shortly after the altercations. Although there is no "clear line," similar injuries have been held to be minor. Wertish v. Krueger, 433 F.3d 1062,

---

[18] As in Part IV.C.1.a, Plaintiff alleges that the "video tracks on the compact disk is [sic] altered, edited, and false and hereby disputed." (Pl.'s Resp. Monio [Docket No. 31], at 1, ¶ 2). Despite his conclusory allegations that the video is false, Plaintiff provides no further evidence to support his allegation. As noted in Part III, supra, "[n]aked assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton, 136 Fed. Appx. 596; see also Simms, 2009 U.S. Dist. LEXIS 89054, *17.

[19] See fn.3, supra.

1067 (8th Cir. 2006) ("[B]ecause some force was reasonably required to arrest and handcuff [the plaintiff], his relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support the conclusion that [the defendant] did not use excessive force."); Stenzel v. Ellis, 916 F.2d 423, 427 (8th Cir. 1990) (bruises and abrasions that require no medical treatment and cause no permanent damage were regarded as minor); Hanks v. Prachar, No. 02-cv-4045 (MJD/RLE), 2009 WL 702177, at *13 (D. Minn. Mar. 13, 2009) (Erickson, M.J.) ("'Allegations of pain as a result of being handcuffed, without some evidence of more permanent injury,' are insufficient to support a claim for excessive force.") (quoting Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005)), adopted by 2009 WL 702177, at *1 (D. Minn. Mar. 13, 2009) (Davis, C.J.).

Even after viewing the medical evidence in the record in the light most favorable to Plaintiff, the Court concludes that no jury could find that the force used by the officers to thwart Plaintiff's self-initiated attacks towards them and to subsequently restrain him was not employed in a "good faith effort to restore discipline." See Irving, 519 F.3d at 446. Plaintiff's mere conclusory allegations made in his limited pleadings, unsupported by any other objective evidence, cannot state a claim for excessive force under the Eighth Amendment. Furthermore, at his administrative hearing, after he was told the alleged charges and circumstances regarding the restraint, Plaintiff "stated that when he heard the Officer state, 'staff assault' the adrenaline kicked in and [Plaintiff] does not dispute assaulting staff." (Aff. Monio, Ex. M).

Consequently, the Court recommends that, with regard to Plaintiff's excessive force claim, Defendants' Motion for Summary Judgment, [Docket No. 16], be granted, and that Plaintiff's excessive force claim be dismissed with prejudice.

### D. Plaintiff's Due Process Claim

Plaintiff alleges that, with regard to the disciplinary charges arising from the December 18, 2011, incident, and the January 3, 2012, hearing on those disciplinary charges, Defendant Green denied him due process of law by denying him (1) the opportunity to call staff and/or inmates as witnesses, (2) the assistance of a staff representative, (3) access to incident reports, and (4) the opportunity to present written evidence in the form of affidavits, and (5) by subjecting him to segregation upon the hearing officer's finding that he assaulted correctional officers; and that Defendant Grandlienard denied him due process of law by denying his appeal. (Compl. at 9-10, ¶¶ 37-40, 45-46). Defendants argue that giving Plaintiff segregation does not implicate a due process right, and that Plaintiff received all of the process he was entitled to under law. (Defs.' Mem. at 15-19).

### 1. Plaintiff was not denied due process of law, because he has not shown that he was denied a constitutionally protected liberty interest.

The Fourteenth Amendment prohibits the deprivation of life, liberty or property without due process of law. "While it is true that the constitutional protections, which are encompassed by the Due Process Clause, do not abate at the time of imprisonment, it is also true that 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" King v. Dingle, 702 F. Supp. 2d 1049, 1075 (D. Minn. 2010) (Erickson, M.J.) (citing Sandin v. Conner, 515 U.S. 472, 485 (1995)) (internal citations omitted), adopted by 2010 U.S. Dist. LEXIS 70392 (Mar. 11, 2010) (Montgomery, J.). The Due Process Clause does not protect a prisoner from every modification in the condition of confinement that results in an adverse impact on the prisoner. Sandin, 515 U.S. at 484-87. To allege a procedural due process claim, an inmate must demonstrate that he has been deprived of a constitutionally protected liberty interest. Id. Such a

constitutionally protected liberty interest exists when the prisoner shows that he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.  A change in the condition of confinement implicates a liberty interest only when the action creates deprivations which "work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996).

Contrary to Plaintiff's arguments, courts routinely hold that a transfer to segregated confinement is not an "atypical and significant hardship" that would create a protected liberty interest triggering due process protection.  See Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002); Roblero-Barrios v. Minnesota Dep't of Corrs., 2011 U.S. Dist. LEXIS 125037, *20 (D. Minn. Sept. 21, 2011) ("assignment to segregated confinement is considered to be a normal part of prison life"); King, 702 F.Supp.2d at 1075 (finding six-month segregation sentence did not constitute a dramatic departure from prison life).[20]

In some cases, the imposition of segregated confinement will require due process protections.[21]  The present case, however, is distinguishable from those cases where segregated

---

[20] See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (finding denial of visitation, exercise privileges, and religious services during 37-day segregation did not give rise to a protected liberty interest); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997) (determining that prisoner had no constitutionally protected liberty interest in remaining in less restrictive prison environment); Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir. 1996) (holding that punitive isolation was not atypical and significant deprivation even though prisoner faced restrictions on mail, telephone access, visitation, and commissary privileges); Wilson v. Harper, 949 F. Supp. 714, 723 (S.D. Iowa 1996) (finding that eleven months in segregation, including six months of punitive segregation was not a protected liberty interest giving rise to Due Process Rights.

[21] See, e.g. Williams v. Norris, 277 Fed. Appx. 647, 648-649 (8th Cir. 2008) (unpublished) (finding twelve (12) years in administrative segregation confinement was an atypical and significant hardship due to the particular restrictions imposed in relation to the segregation); Herron v. Schriro, 11 Fed. Appx. 659, 661-662 (8th Cir. 2001) (unpublished) (determining that the District Court found that the inmate's "lengthy confinement, for more than thirteen years, in administrative segregation, resulted in an atypical and significant hardship in relation to the ordinary incidents of prison life"); Wilkinson v. Austin, 545 U.S. 209, 217, 223-25 (2005) (determining that an atypical and significant hardship existed at a "supermax" prison where, in addition to conditions similar to most in

confinement constitutes an atypical and significant hardship. In the present case, Plaintiff

received segregated confinement for approximately twenty-three (23) *months*. While this is not

an insignificant amount of time, it is substantially less than the twelve (12) *years* at issue in

Williams and the thirteen (13) *years* at issue in Herron v. Schriro, 11 Fed. Appx. 659, 661-62

(8th Cir. 2001) (unpublished).[22]

Plaintiff has not presented any admissible evidence that his being given approximately

twenty-three (23) months of segregation arising out of his December 18, 2011, assault on

correctional officers was so restrictive that it was atypical and significant in relation to the

ordinary incidents of prison life. Plaintiff, therefore, has not created a genuine issue of material

fact that he has a protected liberty interest in obtaining from the Court a vacatur of his

disciplinary sentence to segregation.

Consequently, with regard to Plaintiff's due process claim, the Court recommends that

Defendants' Motion for Summary Judgment, [Docket No. 16], be granted, and that Plaintiff's

due process claims be dismissed with prejudice.

### 2. Even if Plaintiff had been denied a constitutionally protected liberty interest, which he was not, his right to due process was not denied because he was afforded all of the process to which he was entitled.

The federal due process clause requires that a prison disciplinary hearing officer establish

its factual findings at the hearing using "some evidence" as the standard of proof. Goff v.

Dailey, 991 F.2d 1437, 1441 (8th Cir. 1993). However, the power of federal courts to review the

---

solitary confinement, placement is indefinite, is reviewed only annually after initial 30-day review, and disqualifies an otherwise eligible inmate for parole consideration).

[22] See also Rahman X v. Morgan, 300 F.3d 970, 973-74 (8th Cir. 2002) (twenty-six (26) months of segregated confinement was not "atypical and significant hardship"); Jones v. Baker, 155 F.3d 810, 812-13 (6th Cir. 1998) (two-and-one-half years in administrative segregation determined not to be an atypical and significant hardship); Jordan v. Federal Bureau of Prisons, 191 Fed. Appx. 639, 652-53 (10th Cir. 2006) (unpublished) (upholding summary judgment that dismissed prisoner's due process claim, because five years in administrative detention was not an atypical or significant hardship in relation to the ordinary incidents of prison life) ); Bunch v. Long, 2008 U.S. Dist. LEXIS 118598, at *7-9 (W.D. Mo. Nov. 24, 2008) (twenty-two (22) months in administrative segregation did not support a finding of an atypical or significant hardship).

decision of the prison disciplinary hearing officer is limited because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings." Toombs v. Hicks, 773 F.2d 995, 997 (8th Cir. 1985) (citing Courtney v. Bishop, 409 F.2d 1185, 1187 (8th Cir. 1969)).

Plaintiff cites Wolff v. McDonnell, 418 U.S. 539, 556-59 (1974), for the proposition that he was entitled to due process in the hearing that resulted in his transfer to segregation. (Pl.'s Mem. at 9). Although Plaintiff generally is correct that Wolff requires that prisoners be afforded due some process, his argument that he had a due process right to call witnesses is flawed in that it:

> presumes that Wolff contemplated a *full* fact-finding hearing in every prison discipline case. As previously discussed, many constitutional deprivations of protected interests are predicated on no more than notice and an opportunity for the claimant to tell the decisionmaker his side of the story. *No more is required here.* Due process does not entitle prison inmates to a hearing at which they are on equal footing with the prison authorities. Inmates are certainly not constitutionally entitled to the level playing field created by a fully adversarial proceeding which uses a preponderance of the evidence standard.

Goff, 991 F.2d at 1441 (emphasis added).

As noted in Part I, supra, the Minnesota Department of Corrections Policy No. 303.010 differentiates between "major" violations, which can result in extended incarceration, and "minor" violations, such as those brought against Plaintiff, which result in sanctions other than extended incarceration. (Aff. Monio, Ex. I). The U.S. Supreme Court recognized such a distinction in Wilkinson v. Austin, 545 U.S. 209 (2005). In Wilkinson, the Court considered whether the State of Ohio's procedures for assigning maximum security prisoners to its new "supermax" prison afforded those prisoners adequate due process, as required by the Fourteenth Amendment. 525 U.S. at 213. One issue before the Court was whether denying prisoners the right to call witnesses violated their due process rights. Id. at 217. The Court first noted that "[p]risoners held in lawful confinement have their liberty curtailed by definition, so the

procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Id. at 225. The Court distinguished cases like Wilkinson, where the issue is one of placing a prisoner in a more-controlled environment, from Wolff and other cases, that involved subjecting inmates to extended incarceration, and it concluded that when an inmate is subjected to potential administrative segregation, notice of the charges against him and the right to be heard constitute sufficient due process:

> Ohio is not, for example, attempting to remove an inmate from free society for a specific parole violation, see, e.g., Morrissey, 408 U.S. [471], at 481, or to revoke good time credits for specific, serious misbehavior, see, e.g., Wolff, 418 U.S. at 539, where more formal, adversary-type procedures might be useful. Where the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety of other inmates and prison personnel, the informal, nonadversary procedures set forth in Greenholtz, 442 U.S. 1, and Hewitt v. Helms, [459 U.S. 460 (1983)], provide the appropriate model. Greenholtz, supra, at 16 (level of process due for inmates being considered for release on parole includes opportunity to be heard and notice of any adverse decision); Hewitt, supra, at 473-476 (level of process due for inmates being considered for transfer to administrative segregation includes some notice of charges and an opportunity to be heard).

Wilkinson, 545 U.S. at 229.

Plaintiff was afforded the due process rights to which he was entitled in a hearing concerning a minor violation, i.e., he was provided notice of the hearing, allowed to attend, and allowed to state his version of the incident; and upon receiving an unfavorable decision, he had the right to appeal. Cf. De La Garza v. Fabian, 06-cv-208 (RHK/JJG), 2009 U.S. Dist. LEXIS 122137, at *34-36 (D. Minn. November 30, 2009) (Graham, M.J.) (plaintiff received due process where he "received notice, an opportunity to be heard, and a right of appeal pursuant to prison policy"), adopted by 2010 U.S. Dist. LEXIS 726 (D. Minn. Jan. 6, 2010).[23] He was not allowed

---

[23] See also Duwenhoegger v. King, No. 10-cv-3965 (PJS/JSM), 2013 U.S. Dist. LEXIS 25255, at *41 n.12 (D. Minn. Jan. 28, 2013) (Mayeron, M.J.) ("Furthermore, even accepting as true plaintiff's allegations that the hearing officers refused to call witnesses or obtain or present documentary evidence requested by him in connection with various NOVs, that decision was within the MNDOC officials' authority" (collecting cases; citations omitted).),

a staff representative, and was not allowed to call either staff or inmate witnesses, because the policy does not provide for such process in a hearing concerning a minor violation. Accord Haggins v. Minn. Comm'r of Corr., No. 10-cv-1002 (DWF/LIB), 2012 U.S. Dist. LEXIS 39029, at *7 (D. Minn. Feb. 14, 2012) (Brisbois, M.J.) ("Prisoners have the opportunity to call witnesses for major hearings, but not minor hearings" (citing Minnesota Department of Corrections Policy No. 303.010).), adopted by 2012 U.S. Dist. LEXIS 39028 (D. Minn. Mar. 22, 2012) (Frank, J.). Accordingly, Plaintiff was afforded all of the due process required.

Therefore, the Court recommends that, with regard to Plaintiff's due process claim, Defendants' Motion for Summary Judgment, [Docket No. 16], be granted, and that Plaintiff's due process claim be dismissed with prejudice.[24]

## V.　CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 16] be **GRANTED**; and

2. Plaintiff's Motion to Deny Defendants' Summary Judgment Motion [Docket No. 29] be **DENIED**; and

---

adopted by 2013 U.S. Dist. LEXIS 23498 (D. Minn. Feb. 21, 2013) (Schiltz, J.); Pigott v. Corr. Corp. of Am., No. 07-cv-2003 (JNE/JJG), 2008 U.S. Dist. LEXIS 119794, at *8-9 n.4 (D. Minn. July 8, 2008) (Graham, M.J.) ("The Court recognizes that, in Wolff, the Supreme Court held that the Due Process Clause mandates that prisons afford inmates certain minimum procedural protections, including a qualified right to call witnesses at a prison disciplinary hearing, where a state statute regarding good time credits created a liberty interest in a shortened prison sentence. 418 U.S. at 557, 566. In Sandin[ v. Conner, 515 U.S. 472 (1995)], however, the Court made clear that Wolff's procedural protections are triggered only where the deprivation underlying the prisoner's claim is sufficiently severe to trigger the Due Process Clause in the first instance. As discussed above, such is not the case here."), adopted by 2008 U.S. Dist. LEXIS 59815 (D. Minn. Aug. 6, 2008) (Ericksen, J.).

[24] Defendants also argue that qualified immunity shields them from Plaintiff's claims. (Defs.' Mem. at 19-20). Having determined that there are no genuine disputes of material fact to preclude summary judgment on any of Plaintiff's claims, the Court need not specifically address Defendants' qualified immunity defense. See Holden v. Hirner, 663 F.3d 336, 343 ("[b]ecause we conclude Holden failed to demonstrate the deprivation of a constitutional right, we do not discuss further the prison officials' claim of qualified immunity").

3. This action be **DISMISSED WITH PREJUDICE**.


Dated: July 23, 2013                                          s/Leo I. Brisbois
                                                              LEO I. BRISBOIS
                                                              United States Magistrate Judge


### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by August 6, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.